UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA M. MULROY,

                   Plaintiff,           Civil Action No. 16-10474
                                        Honorable Gershwin A. Drain
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                   Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 11]**

       Plaintiff Patricia Mulroy ("Mulroy") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Child Disability Benefits ("CDB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 11], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.      RECOMMENDATION**

       For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Mulroy is not disabled under the Act is not supported by substantial evidence. Thus, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [11] be DENIED, Mulroy's Motion for Summary Judgment [10] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

**II.     REPORT**

### A.      Procedural History

On August 1, 2012, and January 31, 2013, Mulroy filed applications for CDB and SSI, respectively, alleging a disability onset date of January 16, 1991 in her CDB application, and December 1, 1995 in her SSI application.[1]   (Tr. 135-50).   These applications were denied initially on May 8, 2013.   (Tr. 76-83).   Mulroy filed a timely request for an administrative hearing, which was held on February 21, 2014, before ALJ James Kent.   (Tr. 27-51).   Mulroy, who was not represented by an attorney, testified at the hearing, as did her aunt, Susan Finch, and vocational expert Zachary Matthews.   (*Id.*).   On June 17, 2014, the ALJ issued a written decision finding that Mulroy is not disabled.   (Tr. 12-22).   On December 22, 2015, the Appeals Council denied review.   (Tr. 1-5).   Mulroy timely filed for judicial review of the final decision on February 9, 2016.   (Doc. #1).

### B.      Framework for Disability Determinations

Under the Act, benefits are available only for those who have a "disability."   *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).   The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A).   The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:   If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

---

[1]

As the ALJ noted, Mulroy previously received disability benefits under Title II of the Act as an auxiliary child, as well as child SSI benefits, but those benefits were terminated on September 1, 2009. (Tr. 12). Because Mulroy did not timely appeal the decision to terminate her benefits, that decision became binding and is no longer subject to review. *See* 20 C.F.R. §404.905. Thus, regardless of Mulroy's alleged onset date, she is not eligible for CDB benefits prior to September 1, 2009.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also* 20 C.F.R. §§404.1520(a)(2), 416.920(a)(2).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## C.    Background

### 1.    The Relevant Reports and Testimony

At the time of the hearing, Mulroy was 23 years old, and at 5'4" tall, weighed 180 pounds.  (Tr. 160, 165).  She lived in a house with her aunt, Susan Finch, who raised her from the time she was eighteen months old.  (Tr. 41, 45, 176).  She completed high school, taking special education classes, and was taking classes at Washtenaw Community College.  (Tr. 32-33, 166).  Previously, she was in the "summer youth program" through Michigan Works in 2009 and worked briefly as a bell ringer for the Salvation Army in 2011.  (Tr. 33-34, 167).  According to

3

her aunt, Mulroy does not get along well with authority figures "due to impulsive outbursts" and was fired from both of these jobs because of "inappropriate behaviors."  (Tr. 190).

Mulroy alleges disability as a result of cerebral palsy, depression, attention deficit hyperactivity disorder ("ADHD"), and a developmental coordination disorder.  (Tr. 165).  Ms. Finch described Mulroy's alleged disabilities as follows:

> Patricia has continued to struggle with the effects of her medical, emotional, and mental conditions.  She struggles with day to day tasks, such as proper nutrition, grooming, and consistently taking her medications.  She has difficulty making and keeping appointments on her own.  She has very poor impulse control, and has frequent outburst[s] which affect many of the relationships in her life.

(Tr. 175).  According to Mulroy, she has difficulty completing tasks, concentrating, understanding, following instructions, and getting along with others.  (Tr. 181).  She indicated she is able to attend to her own personal care needs, prepare simple meals, do laundry, vacuum, and dust, but admitted she needs reminders to take her medication.  (Tr. 177-78).  She does not have a driver's license because she is "scared to drive."  (Tr. 38, 179).  She indicated she can count change, but she cannot pay bills, handle a savings account, or use a checkbook.  (Tr. 179).  She enjoys reading, knitting, and crocheting, although she has difficulty finishing books or these craft projects.  (Tr. 180).  According to Mulroy, she follows written instructions "moderately" well, but needs "complex" spoken instructions repeated several times.  (Tr. 181).

Ms. Finch's written report and hearing testimony suggest, at least to some extent, that Mulroy overestimates her own abilities.  According to Ms. Finch, Mulroy "has very poor interpersonal skills, has difficulty focusing, cannot follow directions, rarely completes tasks, is very impulsive, and has frequent outbursts which are inappropriate."  (Tr. 184).  In terms of personal care, Ms. Finch indicated that Mulroy "dresses slovenly," bathes infrequently, and is unable to brush her hair thoroughly.  (Tr. 185).  Although Mulroy does perform some household

4

chores, she does not do so "without being asked and reminded several times." (Tr. 186). Ms. Finch further indicated that Mulroy has difficulty following written instructions and spoken instructions that involve more than one or two steps. (Tr. 189). And, Ms. Finch testified that Mulroy is only able to get through her classes because she gets "special assistance at school, "puts an extreme amount of work into her studies," and has a "large supportive network behind her[.]" (Tr. 45-46, 230).

In a letter submitted to the ALJ after the administrative hearing, Ms. Finch further described Mulroy's limitations, saying:

> I have always pushed Patti to take advantage of every educational opportunity because she enjoys learning and loves to read. The amount of time and energy she and I put into this endeavor is enormous. She lacks any kind of long term focus, and has little to no organizational and time management skills. She has consistently had access to a large supportive network behind her which she has difficult[y] utilizing to ensure she succeeds. Navigating to and from school or driving a vehicle is difficult if not impossible for her. Patricia desperately wants to be like others her age and is in need of a positive peer experience but cannot seem to assimilate appropriately into any peer group. Having impaired physical, emotional, mental quirks and poor social skills has made it very difficult for her to do this. Severe anger, impulsivity and depression leads her to have frequent impulsive outbursts on even her most well-meaning supporters, alienating her even more from those around her. She also displays self-destructive and self-injurious behaviors. In spite of seeing Mental Health professionals since she was 7 years old, she continues to express suicidal thoughts and have low self-esteem…. Patti is trying to be more independent but, with independence comes even more severe fluctuations in her abilities. She cannot follow direction, follow a routine, hold a job or maintain any sense of personal organization in her personal life.

(Tr. 230-31).

## 2.   *Vocational Expert's Testimony*

Zachary Matthews testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 46-49). The ALJ asked the VE to imagine a claimant of Mulroy's age, education, and work experience who can perform sedentary work, with the following

5

additional limitations:  can lift 10 pounds occasionally and maximum; requires a sit-stand at will option, provided she is not off task more than 10% of the work period; and is limited to simple, repetitive tasks.  (Tr. 47-48).  The VE testified that the hypothetical individual would be capable of working in the jobs of document preparer (69,000 jobs nationally), bench hand (28,000 jobs), and ticket checker (53,000 jobs).  (*Id.*).

### D.    The ALJ's Findings

At Step One of the five-step sequential analysis, the ALJ found that Mulroy has not engaged in substantial gainful activity since September 1, 2009 (the day on which her child SSI benefits were terminated).  (Tr. 15).  At Step Two, the ALJ found that Mulroy has the severe impairments of depression and organic brain disorder/ADHD.  (*Id.*).  At Step Three, he found that Mulroy's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then found that Mulroy retains the residual functional capacity ("RFC") to perform sedentary work, with the following additional limitations:  can lift 10 pounds occasionally and maximum; requires a sit-stand at will option, provided she is not off task more than 10% of the work period; and is limited to simple, repetitive tasks.  (Tr. 16-17).

At Step Four, the ALJ determined that Mulroy has no past relevant work.  (Tr. 21).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Mulroy is capable of performing a significant number of jobs that exist in the national economy.  (*Id.*).  As a result, the ALJ found that Mulroy is not disabled under the Act.  (Tr. 22).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g).  Judicial review under this statute is limited in that the

court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all

evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

### F.    Analysis

As set forth above, the ALJ found that Mulroy retains the RFC to perform sedentary work, with the following additional limitations:  can lift 10 pounds occasionally and maximum; requires a sit-stand at will option, provided she is not off task more than 10% of the work period; and is limited to simple, repetitive tasks.  (Tr. 16-17).  In her motion, Mulroy argues that the ALJ erred in purportedly accommodating her significant mental impairments with only a limitation to "simple, repetitive tasks."  (Doc. #10 at 18-21).  Specifically, Mulroy argues, *inter alia*, that the ALJ's RFC finding does not address her ability to "respond appropriately in making work-related decisions, respond appropriately to supervision, co-workers and work situations, and deal with changes in routine work setting[s]."  (*Id.* at 20).  For the reasons set forth below, the Court finds merit to this argument.[2]

The ALJ specifically found that Mulroy experiences "moderate" deficiencies in social functioning.  (Tr. 16).  The finding of this level of impairment, if not a more severe level, is

---

[2] Mulroy also argues that the ALJ erred in failing to properly evaluate and weigh the medical opinion evidence.  (Doc. #10 at 11-18).  Because the Court is recommending remand on other grounds, it will not address in detail the merits of this argument.  On remand, however, the ALJ should thoroughly consider Mulroy's arguments in this regard.

supported by the evidence of record.  For example, Mulroy reported difficulty interacting with and getting along with others.  (Tr. 181).  And, according to her aunt, Mulroy does not get along well with authority figures "due to impulsive outbursts" and was fired from the only two jobs she ever held because of "inappropriate behaviors."  (Tr. 190).  Indeed, Ms. Finch further explained:

> Patricia desperately wants to be like others her age and is in need of a positive peer experience but cannot seem to assimilate appropriately into any peer group.  Having impaired physical, emotional, mental quirks and poor social skills has made it very difficult for her to do this.  Severe anger, impulsivity and depression leads her to have frequent impulsive outbursts on even her most well-meaning supporters, alienating her even more from those around her.

(Tr. 230).

Mulroy's medical and educational records tell a similar story.  She was admitted to the psychiatric unit at the University of Michigan Medical Center from January 10-14, 2009, after she cut both of her wrists, requiring stitches, because of increasing anxiety.[3]  (Tr. 260-64).  She was diagnosed with impulse control disorder, depressive disorder, and ADHD and assigned a Global Assessment of Functioning ("GAF")[4] score of 25 on admission (50 at discharge).  (Tr. 262, 279).  The ALJ did not mention this inpatient psychiatric admission in his decision.

On June 2, 2011, Mulroy presented to the Livingston Family Center for a psychiatric evaluation with Ahmad Zubairi, M.D.  (Tr. 290-91).  Mulroy reported having stopped taking her ADHD medication approximately two years earlier, "thinking that now she [was] 18 years old and [did] not need the medication."  (Tr. 290).  As a result, she reported problems with poor

---

[3] Notes from this hospital admission indicate that Mulroy had a prior suicide attempt, at age 13, when she attempted to hang herself.  (Tr. 265).  In addition, it was noted that Mulroy's mother "suffers from severe depression which has precluded her from ever having any responsibility for [Mulroy]," and her father is schizophrenic.  (Tr. 266).

[4] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

attention span, disorganization, impulsivity, and becoming "more easily angry and upset." (*Id.*). She further reported difficulty making friends, saying she is usually quiet and anxious around others. (*Id.*). She was diagnosed with ADHD and a mood disorder, assigned a GAF score of 55, and started on Vyvanse. (Tr. 291).

On August 23, 2011, Mulroy underwent a vocational test battery with Michael Weatherly, M.A. to assess her cognitive, academic, and behavioral skills. (Tr. 281-87). Mr. Weatherly noted that Mulroy worked with very good effort but, consistent with a prior evaluation, she "impulsively blurted out expletives when frustrated." (Tr. 282). In addition, Ms. Finch completed a behavior assessment for Mulroy, which showed "multiple areas of concern." (Tr. 286). In part, Mr. Weatherly indicated: Mulroy "demonstrates hyperactive behavior at a significant level. Her pattern of behavior is consistent with prior behaviors, related history in school, and most importantly, places her at significant risk in her day to day functioning. Her affective state remains a primary concern." (*Id.*). As a result of this evaluation, Mr. Weatherly opined that, in her community college classes, Mulroy should be allowed extended time, use of a tape recorder for lectures, an alternative test site for all tests, use of a calculator for all math operations, tutoring for coursework, a note taker for lecture classes, voice-activated software for writing papers, organizational aides such as planner pads, and a reduced course load (maximum of 12 credit hours per term). (*Id.*).

On April 22, 2013, at the request of the state agency, Mulroy underwent a consultative psychological examination with John Jeter, M.A., L.L.P., L.M.S.W. (Tr. 298-303). Mulroy reported a history of poor relationships with work peers "with anger outbursts and a poor attitude in general," and Ms. Finch indicated that Mulroy is "defensive with criticism." (Tr. 299). On examination, she was cooperative and motivated, and attempted all tasks and worked diligently.

(Tr. 300). Mr. Jeter found her judgment and insight fair, noted that she required extra time and reminders to perform her activities of daily living, and assigned a GAF score of 72. (Tr. 302). In summary, Mr. Jeter found that Mulroy has no difficulty in her "ability to comprehend and carry out simple directions," "perform repetitive, routine simple tasks," and "comprehend complex tasks." (*Id.*).

On August 29, 2013, Mulroy began seeing psychiatrist Alisa Schlacht, D.O. at Livingston Family Center. (Tr. 212). She reported difficulty concentrating and said that her ADHD and depression were affecting everything she did, including finishing tasks, getting organized, losing her keys/phone/etc., fidgeting when sitting, and interrupting others. (*Id.*). She was diagnosed with ADHD and major depressive disorder, in remission, and re-started on Vyvanse. (*Id.*). Mulroy returned to Dr. Schlacht in October 2013, reporting that she frequently forgot to take her medication (two or three times per week), which made it more difficult to concentrate, and indicating that she was "irritable much of the time." (Tr. 211). Her Vyvanse dosage was increased from 30mg to 40mg. (*Id.*). At Mulroy's next visit, in January 2014, Dr. Schlacht noted that Mulroy was "still distractible" but was also still missing medication dosages; her Vyvanse dosage was again increased. (Tr. 210). When last seen by Dr. Schlacht, in February 2014, Mulroy reported somewhat better medication compliance and improved focus. (Tr. 209).

In a letter dated January 27, 2014, Janet Loesche, L.M.S.W., Mulroy's therapist at Livingston Family Center, reported that Mulroy had attended bi-weekly appointments since May 2013. (Tr. 304). Ms. Loesche noted that Mulroy "still struggles with focus and distractibility, and could improve her compliance with medication." (*Id.*). Ms. Loesche then explained:

> In the past year, Patricia has done well in her pursuit of education. She attends Washtenaw Community College and takes classes both on campus

11

> and on line.  This success does not reflect, however, the daily support
> required by her caregiver to assure her transportation, attendance,
> homework completion, and daily hygiene, as well as reminders to take her
> medication.
>
> Patricia is also unable to secure employment, and has not sustained
> employment ever.  She does not have a drivers' license, and it is
> questionable if she ever will.  Her disability directly affects these areas of
> her life.
>
> To understand Patricia, one must look at the whole picture.  She has
> survived a neglectful and abusive family history, has developmental
> disabilities in all areas of her life, struggles with mental health, and is as
> successful as she is because of the guardianship and support provided by
> her Aunt Sue.

(*Id.*).

Despite all of this evidence, and despite the ALJ's well-supported conclusions that Mulroy has severe impairments of depression and organic brain disorder/ADHD and resulting "moderate" limitations in social functioning, neither the hypothetical question posed to the VE nor the RFC contains any reference to such limitations.  (Tr. 15-17, 47-48).  The VE's testimony in response to an ALJ's hypothetical question is immaterial because such testimony only constitutes substantial evidence if the hypothetical accurately portrays the individual's relevant impairments.  *See Varley v. Comm'r of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).   And, although the Sixth Circuit has rejected the proposition that all of a claimants maladies must be listed verbatim, "[t]he hypothetical question … should include an accurate portrayal of [his or her] individual physical and mental impairments."  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004).  As another magistrate judge recently reasoned in a similar case:

> As such, while the hypothetical question did not require the inclusion of
> the phrase, "moderate limitation in social functioning," it ought to have
> acknowledged some degree of impairment consistent with the findings in
> the administrative decision. **A "moderate" limitation (representing the
> mid-point on a five-point scale of none, mild, moderate, marked, and**

12

> **extreme) implies the presence of at least some degree of limitation requiring mention in the question to the VE.**

*Kniffen v. Soc. Sec. Admin.*, 2015 WL 687323, at *7 (E.D. Mich. Feb. 8, 2015) (emphasis added); *see also Leach v. Comm'r of Soc. Sec.*, 2013 WL 3946068, at *15 (E.D. Mich. July 31, 2013) (remanding where ALJ found plaintiff to have moderate impairment in social functioning, but limited plaintiff only to "simple, routine, and repetitive tasks").

Similarly, in *Warren v. Comm'r of Soc. Sec.*, 2015 WL 1245936, at *15 (E.D. Mich. Mar. 18, 2015), the ALJ found that the plaintiff suffered from moderate limitations in social functioning, but limited the plaintiff only to "unskilled work," which the Commissioner argued sufficiently accommodated these limitations.  In rejecting this argument, the Court noted that Social Security Ruling 85-15 "provides that the basic mental demands of unskilled work 'include the abilities to understand, carry out and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting on a sustained basis.'"  *Id.* at *15 (quoting *Soc. Sec. Rul. 85-15*, 1985 WL 56857, at *4 (Jan. 1, 1985)).  The Court further noted that "[a] substantial loss of this ability to deal with supervisors and coworkers 'severely limit[s] the potential occupational base.'"  *Id.* (quoting *Soc. Sec. Rul. 85-15*, 1985 WL 56857, at *4).  For those reasons, the *Warren* court held:

> Here, nothing in the ALJ's RFC or hypothetical questions posed to the VE accounted for plaintiff's moderate limitations in social functioning, such as limited interaction with the public or co-workers.  Thus, there is no testimony regarding what effect such limitations have on the occupational base or the particular unskilled jobs identified by the vocational expert.  Other cases have concluded that moderate limitations in social functioning do, in fact, contrary to the Commissioner's contention, affect the occupational base.  Here … there is [] nothing in the RFC or the hypothetical questions posed to the VE that accommodates the moderate limitation in social functioning as found by the ALJ.  Thus, this matter must be remanded for additional vocational testimony, fully accounting for plaintiff's moderate social limitations.

*Id.* at *15 (internal citations omitted).  The same is true here:  the ALJ found Mulroy to have moderate limitations in social functioning, yet failed to adequately account for these limitations in either the RFC or the hypothetical question posed to the VE.  As such, remand is warranted.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [11] be DENIED, Mulroy's Motion for Summary Judgment [10] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: December 8, 2016                                    s/David R. Grand
Ann Arbor, Michigan                                        DAVID R. GRAND
                                                          United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich.

LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with

a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be

concise, and should address specifically, and in the same order raised, each issue presented in the

objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record
and any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on December 8, 2016.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

15